---

(No 11588.—Judgments reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT L. HONAKER, Plaintiff in Error.

· *Opinion filed December 19, 1917.*

1. CRIMINAL LAW—*when offenses of deserting wife and child are not proven.* The offenses of deserting the wife and minor child of the defendant and refusing to provide for their support where they are in destitute circumstances are not proven where the evidence shows that the defendant provided for their support until the wife voluntarily left him and took the child with her and there is no proof that he was thereafter called upon to support them or that he refused to do so.

2. SAME—*information must be supported by oath or affirmation.* Before a warrant can lawfully be issued for the arrest of a person on an information the information must be supported by an oath or affirmation under the bill of rights provision of the constitution, and unless the objection that the information is not sworn to is waived by the defendant it cannot be disregarded.

CARTER, C. J., dissenting.

WRIT OF ERROR to the County Court of Winnebago county; the Hon. LOUIS M. RECKHOW, Judge, presiding.

FRANK M. RYAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, WILLIAM JOHNSON, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On June 27, 1917, two informations were filed by the State's attorney in the county court of Winnebago county, one of them charging that the plaintiff in error, Robert L. Honaker, on June 20, 1917, deserted his infant child, Florence Ada Honaker, of the age of five months and twenty-three days, and neglected and refused to provide for the support and maintenance of such child, who was then and there in destitute and necessitous circumstances; the other charging that said Honaker on June 20, 1917, without any reasonable cause neglected and refused to provide for the support and maintenance of his wife, Clara Honaker, who was then and there in destitute and necessitous circumstances. A warrant was issued on each information and the bail in each case was fixed at $300. The defendant was taken into custody by the sheriff, and being brought into court pleaded not guilty to each information. The evidence in the two cases being identical they were heard together by stipulation, and trial by jury having been waived, the court heard the evidence and found defendant guilty. Motions for a new trial and in arrest of judgment were made and overruled, and the court entered judgment sentencing the defendant to pay a fine of $150 and costs of prosecution in each case, the fine in each case to be paid in whole to the wife, one fine to be received by her as custodian of the child, and the defendant was committed to jail until the fines should be paid. A writ of error was sued out of this court on the ground that the validity of a statute authorizing the issue of a warrant upon an information not supported by affidavit is involved.

The facts were not in dispute. The parties were married on February 7, 1916, and the child, Florence Ada Honaker, was six months old at the time of the trial. Shortly after the marriage the defendant and his wife bought a set of furniture costing $179, payable in monthly installments, and secured payment by a chattel mortgage on the furniture, and he also bought a stove and other articles at different times. The wife had clothing and presents which she had received at "showers" and from her own people. The defendant was a farm-hand and hired out for a year to George Brewster at $35 per month, and Brewster kept his horse, gave him a garden patch and gave him potatoes, and during that year he paid off the mortgage. In the spring of 1917 the defendant was employed as a farm laborer by John Condon at wages of $2.50 per day. The defendant and his wife lived together in the second story of a house in Love's Park, a suburb of Rockford, for which the defendant paid $10 per month as rent. He was accustomed to get up in the morning about five o'clock, have breakfast and put up his lunch and walk two miles to his work, returning at night after the day's work. They traded at a grocery store near by and the wife ordered groceries as she saw fit. The grocery bill amounted to about $15 for every two weeks. For the last half of May the bill was $14.85 and for the first half of June $16.65, which the defendant paid. On June 20 the rent of the apartments had been paid by the defendant up to July 7. The wife was in the habit of going home to her parents every two or three weeks and remaining there two, three or four days at a time. On June 19 she returned from one of these visits to her parents and there was a quarrel, the details of which were not in evidence. On the morning of June 20 the defendant and his wife ate breakfast together and he started for his work at the usual time, about five o'clock, and his wife then told him she was going to leave and go back to her family, followed him half-way down the stairs, telling him to kiss the

baby good by, and that it would be the last chance he would have to do so. He kissed his wife and child, and after he had gone she left and went to her parents. He did not tell her to go home but she informed him she was going. She called up her mother, and a neighbor girl came for her in a car about one o'clock and took her and the baby to her mother's, where she remained over night. The next day she came back with her mother and took out of the house the dishes, silverware, cooking utensils, bedding, wash tubs, water glasses, pitchers, and everything except the furniture, the mattress on the bed and the rugs, claiming that this property all belonged to her. She testified that the defendant was good to her except with his tongue, and *that* she could not stand. He was in the habit of using profane language to her, cursing and swearing when angry, calling her a thief and accusing her of taking his socks and handkerchiefs home to her folks, and calling them hard names and using profane language in regard to them. When the baby was five weeks old he said it did not look like him and it was not his. He refused to give her ten cents car fare to get to a children's parade in Rockford and said it was ten cents thrown away. He told her he had been her dog and slave as long as he was going to and would not be that any longer, and told her she had got the last cent from him she would ever get. His wife could not be expected to endure the abusive and profane language which he was in the habit of using toward her, but he did maintain and provide for his wife and child according to his ability and circumstances in life. When she wanted money to buy bands for the baby he gave her money for that purpose, and also told her to go over to Newell's store and buy clothing for the child on credit, which she did.

The statute makes it an offense to desert or neglect or refuse to provide for the support or maintenance of a child under the age of eighteen years, in destitute and necessitous circumstances. The defendant was charged with that of-

fense, but there was no evidence tending to prove him guilty of desertion, the fact being that the child was taken away by his wife. It is also an offense to neglect or refuse to provide for the support and maintenance of a wife who is in destitute and necessitous circumstances, and there was no evidence tending to prove that offense. The defendant provided a home for his wife and provided for her support and maintenance there, and there was no evidence, even after his wife deserted him and took from the home practically everything and left him in a dismantled home, that the defendant was called upon and refused to contribute to her support or the support of the child, although she was dependent for maintenance on her own family, where she had voluntarily gone. Even if there was ample justification for her leaving him, the statutory offense of which he was convicted was not proved. The finding and judgment were contrary to the evidence.

In each case the motion in arrest of judgment was on the ground that the warrants issued by the county court on which the defendant was arrested and brought to trial were void and in violation of section 6 of the bill of rights because they were not based upon informations supported by affidavits. The only authority for the arrest of the defendant and bringing him to trial was the warrants disregarding the bill of rights, which prohibits the issuing of a warrant upon an information not supported by oath or affirmation. (*People* v. *Clark*, 280 Ill. 160.) To say that although the warrants were void they furnished a sufficient basis for a trial would be trifling with constitutional rights. Without doubt a defendant may waive the benefit of the constitutional provision and would waive it by failing to make any objection, but it was not waived in this case.

The judgments of the county court are reversed.

*Judgments reversed.*

Mr. CHIEF JUSTICE CARTER, dissenting.